**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OMNI MEDSCI, INC., *Plaintiff*, v. ŌURA HEALTH OY, *Defendant*. | No. 2:26-cv-00289-JRG-RSP **JURY TRIAL DEMANDED** |

**FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Omni MedSci, Inc., by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(1)(B), files this Fourth Amended Complaint against Defendant Ōura Health Oy ("Ōura" or "Defendant") for infringement of United States Patent Nos. 9,055,868 ("the '868 Patent"), 9,651,533 ("the '533 Patent"), 10,874,304 ("the '304 Patent"), and 12,268,475 ("the '475 Patent") (collectively, "Asserted Patents") (copies of the Asserted Patents are attached as Exhibits 1, 2, 3, and 4 respectively), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendant's unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, or having imported into the United States products that infringe or enable the infringement of one or more claims of the Asserted Patents.

1

**THE PARTIES**

2.      Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

3.      Defendant Ōura Health Oy ("Ōura") is a Finnish osakeyhtiö with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

4.      Ōura designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports rings configured to measure physiological parameters, including products accused of infringement in this Fourth Amended Complaint, into the United States, including this Judicial District. In addition, Ōura has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Fourth Amended Complaint.

**JURISDICTION AND VENUE**

5.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 4 above.

6.      Jurisdiction and venue for this action are proper in this Judicial District.

7.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Ōura at least because, through Ōura's own acts and/or through the acts of others acting as its agent, representative, or alter ego, Ōura (i) has a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of

Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Fourth Amended Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Fourth Amended Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

9.      For example, Ōura has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Fourth Amended Complaint, and Ōura has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

10.     Defendant has established sufficient minimum contacts with the State of Texas and this Judicial District such that it should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendant has purposefully directed activities at residents of the State of Texas, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

11.     Venue is proper in this Judicial District as to Defendant under 28 U.S.C. §§ 1391 or 1400(b).

12.    As a foreign entity, venue is proper as to Ōura under 28 U.S.C. § 1391(c)(3).  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants").

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

13.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 12 above.

14.    Dr. Islam received his B.S. degree in 1981, a M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge.

15.    Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

16.    Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a Full Tenured Professor of Optics and Photonics.

17.    Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School, at the University of Michigan.  He was previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

18.    From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of

America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

19.    Dr. Islam has published over 135 papers in refereed journals, authored three books has written several book chapters, and has been an invited speaker at over 80 conferences and symposia on issues related to his research.  He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

20.    With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicine applications.

21.    In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

22.    By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

23.    On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

24.    The Asserted Patents result from extensive research and development by Dr. Mohammed Islam on behalf of Omni MedSci.

**The Asserted Patents**

**U.S. Patent No. 9,055,868**

25.     On June 16, 2015, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,055,868 ("the '868 Patent"), entitled "System and Method for Voice Control of Medical Devices."  The '868 Patent is attached as Exhibit 1.

26.     Plaintiff is the assignee of all rights, title, and interest in and to the '868 Patent and, at a minimum, of all substantial rights in the '868 Patent, and possesses all rights of recovery, whether legal or equitable, under the '868 Patent, including the right to recover damages for past infringement.

27.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '868 Patent.

28.     Plaintiff and any of its predecessors-in-interest have not licensed the '868 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '868 Patent.

29.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '868 Patent.

30.     The '868 Patent is valid and enforceable.

31.     The disclosed and claimed inventions of the '868 Patent provide improvements over prior art optical diagnostic systems by way of providing, inter alia, a control system remote from an optical measurement device associated with a user that can wirelessly receive and transmit measured physiological information associated with the user and that can receive both voice input and manually entered input. *See* '868 Patent at 1:39–63. The invention also includes a host capable

of receiving, storing, and processing wireless data transmitted by the control system. The host provides for generating and storing status information of the user and can also communicate the information to remote display devices. *See id*. at 1:63–2:33. Thus, the inventions of the '868 Patent provide greater flexibility and convenience in the operation and/or control of physiological measurement devices at remote locations as well as enhanced data processing, storage and display capabilities at a variety of locations.

32.     The asserted claims of the '868 Patent comprise at least the following physical components: a light source comprising one or more semiconductor diodes generating an input light beam and a lens system configured to communicate a portion of the input light beam onto a part of a user's body comprising blood for use in a measurement on the user; a software application associated with a control system for generating data representing physiological information based in part on the measurement; the control system having a touch-screen, voice and manual inputs capabilities, and circuitry for obtaining position information from a location sensor and a wireless transceiver; and a host comprising a digital file for storing wireless data, control logic to process the wireless data to generate a stats of the user, and an output for communicating a portion of the status or associated information of a communication link to one or more remotely located display output devices (*see* claim 7). Claim 9 further recites the input light beam being adapted for use in blood diagnostics comprising a spectroscopic procedure. Thus, the asserted claims of the '868 Patent are each directed to a physical system and are not directed to an abstract idea.

33.     The inventions of the asserted claims of the '868 Patent provide the capability of non-invasive optical measurement of physiological parameters associated with a user and storage and further processing of such physiological information by a wirelessly connected control system, as well as the further processing and storage capabilities of a host system enabled to also

7

communicate the information for display on one or more remote display devices. The asserted dependent claims further recite light source details particularly suited to diagnostic measurements of interest. These elements provide for the unique and unconventional application of optical diagnostics, communications and control technology to provide more capable and useful non-invasive diagnostic systems for measuring physiological parameters of a user.

34.     Thus, the asserted claims of the '868 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '868 Patent.

### U.S. Patent No. 9,651,533

35.     On May 16, 2017, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,651,533 ("the '533 Patent"), entitled "Short-Wave Infrared Super-Continuum Lasers for Detecting Counterfeit or Illicit Drugs and Pharmaceutical Process Control."  The '533 Patent is attached as Exhibit 2.

36.     Plaintiff is the assignee of all rights, title, and interest in and to the '533 Patent and, at a minimum, of all substantial rights in the '533 Patent and possesses all rights of recovery, whether legal or equitable, under the '533 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

37.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '533 Patent.

38.    Plaintiff and any of its predecessors-in-interest have not licensed the '533 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '533 Patent.

39.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '533 Patent.

40.    The '533 Patent is valid and enforceable.

41.    The '533 Patent discusses an unmet need for non-invasive physiological measurement techniques such as glucose monitoring (e.g., monitoring glucose without drawing blood). *See* '533 Patent at 3:47–61. The '533 Patent explains that conventional non-invasive systems failed to provide adequate sensitivity, selectivity, and repeatability of measurement results. *See id*. at 3:61–63. It discloses techniques and wearable measurement devices that use brighter light sources outputting optical beams that include near-infrared wavelengths to increase the signal level from blood constituents. *See id*. at 5:35–47. Devices disclosed in the specification include a lens system for receiving an output beam and delivering an analysis output beam to a sample, and a receiver for detecting and processing a portion of the analysis output beam reflected from the sample. *See id*. at 5:47–54. The '533 Patent discloses other techniques, such as using pattern matching in spectral fingerprinting and software techniques, to more reliably identify different constituents in the blood. *Id*. at 4:18–28.

42.    The '533 Patent further discloses the capability to provide value-add services by wirelessly communicating the monitored data to a personal device such as a smartphone, and then wirelessly communicating the processed data to the cloud for storing, processing, and transmitting to several locations. In the disclosed system, the personal device is configured to receive and

process at least a portion of the output signal, to store and display the processed output signal, and to transmit at least a portion of the processed output signal over a wireless transmission link. *See id.* at 5:54–6:3 and 26:27–56.

43.    The asserted claims of the '533 Patent comprise at least the following physical components: a light source comprising light emitting diodes for generating an output optical beam with one or more optical wavelengths including at least a portion being in the wavelength range of between 700 and 2500 nanometers, a plurality of lenses receiving a portion of the output optical beam an delivering an analysis output beam to a sample, a receiver to receive and process a portion of the analysis output beam reflected from the sample to generate an output signal, a personal device configured to receive and process a portion of the output signal and to store and display the processed output signal, and a remote device configured to receive a wirelessly transmitted output status comprising a portion of the processed output signal and to process the received output status (*see* claims 11 and 12). The asserted claims also include one or more filters of the receiver in front of one or more detectors to select a fraction of the one or more wavelengths (claim 11) or the capability to generate the output signal in part by comparing signals at different optical wavelengths (claim 12). Thus, the asserted claims of the '533 Patent are each directed to a physical system and are not directed to an abstract idea.

44.    The asserted claims of the '533 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity from at least one of the semiconductor sources and by increasing the pulse rate of at least one of the semiconductor sources, as well as the capability to synchronize the receiver with the light source. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater

10

signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters of a user.

45.     Thus, the asserted claims of the '533 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '533 Patent.

### U.S. Patent No. 10,874,304

46.     On December 29, 2020, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,874,304 ("the '304 Patent"), entitled "Semiconductor Source Based Near Infrared Measurement Device with Improved Signal-to-Noise Ratio." The '304 Patent is attached as Exhibit 3.

47.     Plaintiff is the assignee of all rights, title, and interest in and to the '304 Patent and, at a minimum, of all substantial rights in the '304 Patent, and possesses all rights of recovery, whether legal or equitable, under the '304 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

48.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '304 Patent.

49.     Plaintiff and any of its predecessors-in-interest have not licensed the '304 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '304 Patent.

50.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '304 Patent.

51.     The '304 Patent is valid and enforceable.

52.     The asserted claims of the '304 Patent comprise at least the following physical components: a light source comprising semiconductor sources for generating an optical beam; a device for generating and delivering an input optical beam / analysis output beam to a sample or tissue; and a receiver or measurement device configured to capture a portion of the optical beam reflected from the sample or tissue and to generate an output signal representing a non-invasive measurement on blood contained within the sample or tissue (*see* claim 11). Certain claims also include a smartphone or tablet configured to receive and process a portion of the output signal, store and display the processed output signal, and wirelessly transmit a portion of the processed output signal, as well as a cloud computing platform configured to receive a portion of the wirelessly transmitted processed output signal and to process and store the resulting processed data (*see* claim 11). Thus, the asserted claims of the '304 Patent are each directed to a physical system or device and are not directed to an abstract idea.

53.     The asserted claims of the '304 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of light sources, or by differencing a first signal generated responsive to light received while the semiconductor sources are off and a second signal generated responsive to light received while at least one of the semiconductor sources is on (*see* claim 11). These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art,

yielding more accurate and reliable non-invasive measurements of physiological parameters associated with the blood of a user.

54.    Certain of the asserted claims of the '304 Patent include additional elements that provide further beneficial enhancements, such as artificial intelligence- based pattern identification or classification and identification of an object applying regression signal processing methodologies or multivariate techniques (claim 12).

55.    Thus, the asserted claims of the '304 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters and/or identification of associated objects. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '304 Patent.

### U.S. Patent No. 12,268,475

56.    On April 8, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,268,475 ("the '475 Patent"), entitled "Wearable Device for Differential Measurement on Pulse Rate and Blood Flow."  The '475 Patent is attached as Exhibit 4.

57.    Plaintiff is the assignee of all rights, title, and interest in and to the '475 Patent and, at a minimum, of all substantial rights in the '475 Patent, and possesses all rights of recovery, whether legal or equitable, under the '475 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

58.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '475 Patent.

59.    Plaintiff and any of its predecessors-in-interest have not licensed the '475 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '475 Patent.

60.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '475 Patent.

61.    The '475 Patent is valid and enforceable.

62.    The '475 Patent is related through a chain of continuation applications to U.S. Patent No. 9,651,533 and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

63.    The asserted claims of the '475 Patent are directed to an apparatus (*e.g.*, wearable device configured to be worn by a user) that comprises at least the following physical components: a light source that may comprise a plurality of light emitting diodes (LEDs); one or more lenses configured to receive output light from the light source and direct it towards bodily tissue of a user; one or more optical detectors configured to receive at least a portion of output light from the light source reflected from the tissue of the user; and a processor (*see* claims 1, 5, and 8). Certain claims also include further physical components such as one or more biosensors and an analog to digital converter (*see* claim 1) and a non-transitory computer readable medium (*see* claim 5). Thus, the asserted claims of the '475 Patent are each directed to a physical system or device and are not directed to an abstract idea.

64.    The asserted claims of the '475 Patent further recite the capability of increasing the signal-to-noise ratio of an output signal associated with a physiological parameter of the user by using or comparing a first signal generated responsive to light received while the semiconductor

14

sources are off and a second signal generated responsive to light received while at least one of the semiconductor sources is on (*see* claims 1 and 8), by synchronizing the detection system to the light source (*see* claim 1), and by modulating the light source with a modulation frequency (*see* claim 13). These elements provide for a unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a blood constituent or a blood flow of a user.

65. Certain of the asserted claims of the '475 Patent include additional elements that provide further beneficial enhancements, such as particular arrangement of detectors in the apparatus (*see* claim 1), particular functionality for communicating with a smart phone or tablet (*see* claim 7), a particular positioning, configuration, and arrangement of LEDs and detectors along an arc (*see* claim 6) , using artificial intelligence technology to make decisions associated with the output signal (*see* claim 5), and use of output light within a particular optical wavelength range (*see* claim 11).

66. Thus, the asserted claims of the '475 Patent are directed to specific improvements to wearable devices for non-invasive monitoring of physiological parameters, including parameters associated with a blood constituent or blood flow of a user. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '475 Patent.

**Knowledge of the Asserted Patents**

67. Defendant has had actual notice of the '868, '533, and '304 Patents and the infringements alleged herein at least upon service of Plaintiff's Original Complaint. *See Omni*

*MedSci, Inc. v. Samsung Electronics Co., Ltd.*, No. 2:24-cv-01070-JRG-RSP, Dkt. 1 (E.D. Tex. Filed, Dec. 20, 2024) ("Original Action") On information and belief, Defendant has had actual notice of the '475 Patent and the infringement herein at least as of May 5, 2025.

68.    On information and belief, Ōura had actual notice of the '533 Patent prior to the filing of the Original Compliant (*See* Original Action, Dkt. 1) through its efforts to patent related technologies. U.S. Patent No. 12,013,725 ("the '725 Patent") issued to Ōuraring Inc. on June 18, 2024. The '725 Patent identifies on its face the '533 Patent.

69.    On information and belief, Defendant has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the Asserted Patents. The timing, circumstances, and extent of Defendant obtaining actual knowledge of the Asserted Patents prior to commencement of this lawsuit will be confirmed during discovery.

## THE ACCUSED SYSTEMS

70.    Defendant Ōura makes, uses, sells, offers for sale, and/or imports into the United States a variety of smart rings. These smart rings include, among others, Gen 1, Gen 2, Gen 3, and Gen 4 series smart rings (each an "Ōura Ring"). The Ōura Ring products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an iOS and Android OS smartphone or tablet computer. Ōura actively markets and supports sales of Ōura Ring products through its websites and other means, and sells these smart rings to retailers, distributors, and/or other resellers.

71.    Ōura also provides a cloud computing platform, such as the Ōura Cloud. Ōura also provides software applications, such as the Ōura app, configured to integrate Ōura Ring products

for use with iOS and Android OS smartphones and tablets, including Samsung Phone products, Samsung Tablet products, OnePlus Phone products and OnePlus Tablet products.

72.    When the user wears an Ōura Ring on their finger, the ring measures physiological parameters using various hardware components. The Ōura Ring products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform such as the Ōura Cloud. Thus, Ōura provides and supports multiple components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of an Ōura Ring.

**Count I: Infringement of the '868 Patent**

73.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 72 above.

74.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least claims 7 and 9, within the United States. Ōura has been engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura has sold the Ōura Ring products through to distributors, retailers, and/or other customers throughout the United States, and actively marketed and supported sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone, and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform.

Ōura has marketed and promoted the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated diagnostic system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least claims 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising Ōura Ring products.

75.    Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the Ōura Ring products was provided as early as the Original Complaint.  *See* Original Action, Dkt. 1.  The '868 Patent is infringed by reference to particular Ōura Ring products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 70–72 above.

76.    Ōura's infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**Count II:  Infringement of the '533 Patent**

77.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 76 above.

78.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least

18

claims 11 and 12, within the United States. Ōura has been and is engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura sells the Ōura Ring products through to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Ōura Ring products.

79.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the Ōura Ring products was provided as early as the Original Complaint. *See* Original Action, Dkt. 1. The '533 Patent is infringed by reference to particular Ōura Ring products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 70–72 above.

80.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '533 Patent, including at least

19

claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

81.     Ōura's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Ōura Ring products integrated as intended with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or or supported by Ōura. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 11 and 12, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing an Ōura Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

82.     Ōura has had actual notice of the '533 Patent prior to the filing of this Fourth Amended Complaint as alleged in Paragraphs 67–69 above. Ōura also has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of the Original Complaint. *See*

Original Action, Dkt. 1. The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit will be confirmed during discovery.

83.    Ōura actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating an Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose. Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating,

enhancing, and providing ongoing support and maintenance for the Ōura Ring products including the physiological measurement features thereof.

84.     Upon gaining knowledge of the '533 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '533 Patent. Despite knowledge of the '533 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '533 Patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. Ōura directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

85.     Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

86.    Ōura's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

87.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it. Ōura continues to infringe the '533 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Ōura continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Fourth Amended Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. Ōura's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### Count III:  Infringement of the '304 Patent

88.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 87 above.

89.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least claims 12 and 13, within the United States. Ōura has been and is engaged in one or more of these

direct infringing activities related to its Ōura Ring products. Ōura sells the Ōura Ring products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 12 and 13 of the '304 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Ōura Ring products.

90.     Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least claims 12 and 13 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Ōura Ring wearable devices within the United States and within this District.

91.     Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the Ōura Ring products was provided as early as the Original Complaint. *See* Original Action, Dkt. 1. The '304 Patent is infringed by reference to particular Ōura Ring products, popular

24

Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 70–72 above.

92. Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '304 Patent, including at least claims 12 and 13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

93. Ōura's customers and other end-users directly infringe at least claims 12 and 13 at least by making and using infringing measurement systems comprised of Ōura Ring products integrated with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Ōura. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 12 and 13 including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 12 and 13 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing an Ōura Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud

computing platform. Ōura's customers and other end-users also directly infringe at least claims 12 and 13 at least by using Ōura Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

94.    Ōura has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of the Original Complaint. *See* Original Action, Dkt. 1. The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit will be confirmed during discovery.

95.    Ōura actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose. Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the

26

patented systems are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Ōura products including the physiological measurement features thereof.

96.     Upon gaining knowledge of the '304 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '304 Patent. Despite knowledge of the '304 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '304 Patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. Ōura directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

97.     Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to

27

the inventions claimed by at least claims 12 and 13 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

98.    Ōura's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

99.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it. Ōura continues to infringe the '304 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Ōura continues its infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Fourth Amended Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. Ōura's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## Count IV:  Infringement of the '475 Patent

100.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 99 above.

101.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C.

28

§ 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Ōura Ring wearable devices that embody the inventions claimed in the '475 Patent, in particular, at least claims 1, 5-8, and 11–13, within the United States and within this District.  Ōura has been and is engaged in one or more of these direct infringing activities related to its Ōura Ring products.  Ōura sells the Ōura Ring products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  The Ōura Ring products are designed to connect to and work in concert with a smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud.  On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5–8, and 11–13 of the '475 Patent in connection with development, testing, and/or demonstration of Ōura Ring products.

102.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '475 Patent, including at least claims 1, 5–8, and 11–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

103.    Ōura's customers and other end-users directly infringe at least claims 1, 5–8, and 11–13 at least by using infringing Ōura Ring products, which may be integrated with a smartphone or tablet running a health mobile app provided and/or supported by Ōura.  End-users have used and continue to use the subject matter of asserted system claims 1, 5–8, and 11–13 by placing the Ōura Ring products into service and exercising control over them and obtaining beneficial use of each element of the claimed devices.  End-users initiate use of Ōura Ring products by placing an Ōura Ring on their finger, which may be wirelessly paired to a smartphone or tablet and synched to a health app on the smartphone or tablet with an associated cloud-based account.  The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements.  Ōura's customers and other end-users also directly infringe at least claims 1, 5–8, and 11–13 at least by using Ōura Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

104.    On information and belief, Ōura has actual notice of the '475 Patent and the infringement alleged herein at least as of May 5, 2025.

105.    The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

106.    Ōura actively induces third parties, including customers and end-users, to use infringing Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose.  Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an

infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '475 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that each element of the patented devices are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Ōura products including the physiological measurement features thereof.

107. Upon gaining knowledge of the '475 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '475 Patent. Despite knowledge of the '475 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '475 Patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent. Ōura directly benefits from and actively and knowingly encourages customers and end-users to use infringing Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with

31

the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '475 Patent.

108.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing Ōura Ring products pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5–8, and 11–13 of the '475 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

109.    Ōura's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

110.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it.  Ōura continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Ōura continues its infringement notwithstanding actual knowledge of the '475 Patent (including through service of this Fourth Amended Complaint) and without a good faith basis to believe that its activities do not

infringe any valid claim of the '475 Patent. Ōura's infringement of the '475 Patent, following its knowledge of the '475 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMAND

111. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendant as follows:

a. finding that Defendant has directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of each of the Asserted Patents;

b. awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendant's willful infringement, and damages for any continued post-verdict infringement;

c. awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

d. declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

e. a permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing or inducing or contributing to the infringement

33

of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined

by the Court; and

       f.      awarding all such other costs and further relief the Court determines to be just and

equitable.

Date:    April 15, 2026                              Respectfully submitted,

                                                     */s/ Daniel S. Stringfield w/ permission*
                                                     *William E. Davis, III*
                                                     William E. Davis, III
                                                     Texas Bar No. 24047416
                                                     Ty Wilson
                                                     Texas Bar No. 24106583
                                                     **DAVIS FIRM PC**
                                                     213 N. Fredonia Street, Suite 230
                                                     Longview, TX 75601
                                                     (903) 230-9090
                                                     bdavis@davisfirm.com
                                                     twilson@davisfirm.com

                                                     Daniel S. Stringfield (Admitted in E.D. Tex.)
                                                     Illinois Bar No. 6293893
                                                     Timothy P. Maloney (Admitted in E.D. Tex.)
                                                     Illinois Bar No. 6216483
                                                     Karl R. Fink (Admitted E.D. Tex.)
                                                     Illinois Bar No. 6180508
                                                     Matthew A. Werber (Admitted E.D. Tex.)
                                                     Illinois Bar No. 6287658 Karl R. Fink
                                                     (Admitted E.D. Tex.)
                                                     Illinois Bar No. 6180508
                                                     Daniel D. Georgiev (Admitted in E.D. Tex.)
                                                     Illinois Bar No. 6326950
                                                     Texas Bar No. 24136166
                                                     Peter C. Krusiewicz (Admitted in E.D. Tex.)
                                                     Illinois Bar No. 6342444
                                                     Alvaro Cure Dominguez (Admitted E.D. Tex.)
                                                     Illinois Bar No. 6343312
                                                     Randal Alexander (Admitted E.D. Tex.)
                                                     Illinois Bar No. 6298199
                                                     **NIXON PEABODY LLP**
                                                     70 West Madison St., Suite 5200
                                                     Chicago, IL 60602
                                                     (312) 977-4400
                                                     dstringfield@nixonpeabody.com
                                                     tmaloney@nixonpeabody.com
                                                     mwerber@nixonpeabody.com
                                                     krfink@nixonpeabody.com
                                                     dgeorgiev@nixonpeabody.com
                                                     pkrusiewicz@nixonpeabody.com
                                                     acuredominguez@nixonpeabody.com
                                                     ralexander@nixonpeabody.com

Elizabeth M. Chiaviello (Admitted in E.D. Tex.)
Texas Bar No. 24088913
D.C. Bar No. 90033239
Benjamin R. Holt (Admitted in E.D. Tex.)
D.C. Bar No. 1048285
**NIXON PEABODY LLP**
799 9th Street NW, Suite 500
Washington, D.C. 20001
(202) 585-8000
echiaviello@nixonpeabody.com
bholt@nixonpeabody.com

Nicholas Choi (Admitted in E.D. Tex.)
New York Bar No. 5811492
**NIXON PEABODY LLP**
55 West 46th Street
New York, NY 10036
(212) 940-3013
nchoi@nixonpeabody.com

Taylor Pfeifer (Admitted in E.D. Tex.)
California Bar No. 334181
tpfeifer@nixonpeabody.com
**NIXON PEABODY LLP**
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
Tel: (213) 629-6000
Fax: (213) 629-6001

Alec M. Royka (Admitted E.D. Tex.)
Virginia Bar No. 95,959
aroyka@nixonpeabody.com
**NIXON PEABODY LLP**
677 Broadway, 10th Floor
Albany, NY 12207
Tel: 518-427-2655
Fax: 833-834-7265

***Attorneys for Plaintiff Omni MedSci, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on April 15, 2026, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ William E. Davis, III
William E. Davis, III