[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

OMNI MEDSCI, INC.,

*Plaintiff*,

v.

OURA HEALTH OY,

*Defendant*.

Civil No. No. 2:26-cv-00289-JRG-RSP

**JURY TRIAL DEMANDED**

[redacted]

**OURA HEALTH OY'S OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON OURA'S MARKING DEFENSE (Dkt. 11)**

[redacted]

## I. INTRODUCTION

Omni's Motion (Dkt. 11; "Motion" or "Mot.") rests on a deceptively narrow premise: that because [redacted] the '868 Patent was never practiced by a licensee, and therefore no marking obligation ever arose. Mot. at 1–3. But Omni's Motion ignores the elephant in the room—the products that Omni's own operating affiliate, Omni Sciences, Inc. ("Omni Sciences"), [redacted] that indisputably practiced at least claim 1 of the '533 Patent. *See* Ex. A (Islam Dep. Vol. 2) at 506:10-21 ([redacted]). Indeed, Omni's inventor and Chief Technology Officer, Dr. Mohammed Islam, testified under oath that [redacted] satisfies each and every element of claim 1 of the '533 Patent—one of the four Asserted Patents in this case. *Id.* at 493:10-505:13. That sworn testimony alone creates a genuine issue of material fact that precludes summary judgment on Oura's marking defense.

Omni's Motion also improperly confines its analysis to a single patent—the '868 Patent—while wholly ignoring whether marking obligations arose as to the other three Asserted Patents (the '533, '304, and '475 Patents). The marking requirement of 35 U.S.C. § 287 applies whenever a patentee or its licensee makes or sells a "patented article." Under the undisputed evidence, Omni Sciences [redacted] that practice at least the claims of the '533 Patent, and likely the similar claims of the related '304 Patent. Because [redacted] were not marked, Omni's damages are limited to the period after it provided actual notice to Oura. Summary judgment should be denied.

[redacted]

## II. RESPONSE TO OMNI STATEMENT OF ISSUES TO BE DECIDED

As Omni does not contest that no products have been marked, the issue to be decided by the Court is whether Omni carried its burden to show that there were no patented articles subject to the marking requirements for any Asserted Patents.

## III. RESPONSE TO OMNI'S STATEMENT OF UNDISPUTED FACTS

For the reasons set forth herein, Oura disputes Omni's allegedly undisputed fact no. 1, but does not dispute facts nos. 2-5. Furthermore, the following material facts otherwise preclude summary judgment:

1. Omni Sciences, the operating affiliate of Omni and a subsidiary of the same parent entity, Omni Technology Holdings, [redacted]. *See* Ex. B (Islam Dep. Vol. 1) at 39:19-40:11, 112:11-113:18.
2. Dr. Islam testified that Omni Sciences [redacted]. Ex. A (Islam Dep. Vol. 2) at 501:5-21 ([redacted]).
3. Dr. Islam confirmed, element-by-element, that [redacted] is covered by claim 1 of the '533 Patent, including: (a) a semiconductor source configured to generate an input beam (the DFB laser diode); (b) one or more optical amplifiers; (c) one or more optical fibers; (d) a nonlinear element; (e) an output beam with broadened spectrum in the near-infrared range;

[redacted]

(f) a measurement apparatus; (g) a receiver; and (h) a personal device comprising a wireless receiver, display, microprocessor, and other recited elements. *Id.* at 493:10-505:13.

4. Dr. Islam further acknowledged that [redacted] *Id.* at 506:20-21.

5. Omni Sciences has had [redacted] *See* Ex. B at 67:14-68:1.

6. The Omni corporate structure is such that Omni MedSci holds the patents, while Omni Sciences is the "operating entity" that builds prototypes, develops products, and delivers them to customers. *Id.* at 35:7-36:17. Both Omni MedSci and Omni Sciences are subsidiaries of Omni Technology Holdings. *Id.* at 36:5-9.

7. Omni Sciences acted "for or under" Omni MedSci for purposes of § 287 when manufacturing and delivering patented articles. *Id.* at 43:16-44:3.

8. None of Omni's [redacted] were marked with any patent numbers of the Asserted Patents.

## IV. LEGAL STANDARD

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views all evidence in the light most favorable to the non-moving party. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1363 (Fed. Cir. 2017).

Under 35 U.S.C. § 287(a), a patentee's failure to mark patented articles limits recoverable damages to the period after actual notice. The requirement applies to the patentee and "persons

[redacted]

making, offering for sale, or selling within the United States any patented article for or under" the patentee. *Id.* An alleged infringer bears only "an initial burden of production to articulate the products it believes are unmarked 'patented articles'"—a "low bar." *Arctic Cat*, 876 F.3d at 1368. Once met, "the patentee bears the burden to prove the products identified do not practice the patent." *Id.* The alleged infringer "need not produce claim charts"; rather, the patentee must "prove that the unmarked products identified by the infringer do not fall within the patent claims." *Id.* at 1369. A "patented article" is not limited to articles falling within the asserted claims—it encompasses any article "covered by one or more claims of an issued patent." *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 5:01-cv-344, 2004 WL 5268123, at *19–20 (E.D. Tex. Aug. 4, 2004).

## V. ARGUMENT

As a threshold matter, under the burden-shifting framework established by the Federal Circuit in *Arctic Cat*, Oura has satisfied its initial burden of production—a "low bar"—by identifying both the specific unmarked products (*e.g.*, [redacted]) and the basis for believing those products practice the Asserted Patents (Dr. Islam's own element-by-element testimony mapping [redacted] to claim 1 of the '533 Patent, and the [redacted]). *See* 876 F.3d at 1368; *see also* Oura's March 30, 2026 Supplement Obj. and Resp. to Omni's Interrogatory 17 (attached as Ex. C) at 40 (Dr. Islam [redacted]), and Oura's Answer (Dkt. 4) at 21 (" Omni failed to meet its applicable obligations under 35 U.S.C. § 287 due

[redacted]

to Omni's licensees/affiliates failing to mark…. products made by Omni or its affiliates under government contracts").

The burden now falls on Omni to "prove the products identified do not practice the patent." *Arctic Cat*, 876 F.3d at 1368. Omni's Motion does not even acknowledge the existence of the [redacted], let alone carry its burden of proving they fall outside the patent claims. That failure is independently fatal to the Motion. *See id.* at 1369 ("It is the patentee who bears the burden of proving that it satisfied the marking requirements and thus the patentee who would have to prove that the unmarked products identified by the infringer do not fall within the patent claims.").

### A. Omni's Motion Ignores the '533 Patent, the '304 Patent, and the [redacted] That Practice These Patents

Omni's Motion focuses exclusively on the '868 Patent and [redacted] arguing that those devices do not use light and therefore do not practice the '868 Patent claims. Mot. at 2–3. But even if the Court were to accept Omni's argument with respect to the '868 Patent and [redacted] Omni has wholly failed to address the marking obligation as it relates to any patents, including the '533 Patent and '304 Patents.

Dr. Islam's own deposition testimony establishes that Omni Sciences [redacted] that practice claim 1 of the '533 Patent. When walked through the individual elements of claim 1, Dr. Islam confirmed each was met by [redacted]—including the semiconductor source (DFB laser diode), optical amplifiers, optical fibers, nonlinear element, near-infrared output beam, measurement apparatus, receiver, and personal device. Ex. A (Islam Dep. Vol. 2) at 493:10-505:13. To dispel any doubt, Dr. Islam expressly confirmed that [redacted] *Id.* at 506:20-21. These undisputed admissions, paired with the fact that Omni does

[redacted]

not contest that no products were actually marked, establish that patented articles within the scope of claim 1 of the ’533 Patent were made and delivered to third parties without marking.

Further, claim 1 of the ’304 Patent closely mirrors claim 1 of the ’533 Patent, and the two patents share a specification:

| | |
|---|---|
| 1. A measurement system comprising:<br><br>a light source configured to generate an output optical beam, comprising:<br><br>one or more semiconductor sources configured to generate an input beam;<br><br>one or more optical amplifiers configured to receive at least a portion of the input beam and to output an intermediate beam from at least one of the one or more optical amplifiers; and<br><br>one or more optical fibers configured to receive at least a portion of the intermediate beam and to communicate at least part of the portion of the intermediate beam to a distal end of the one or more optical fibers to form a first optical beam;<br><br>a nonlinear element configured to receive at least a portion of the first optical beam and to broaden a spectrum associated with the at least a portion of the first optical beam to at least 10 nm through a nonlinear effect in the nonlinear element to form the output optical beam with an output beam broadened spectrum; and<br><br>wherein at least a portion of the output beam broadened spectrum comprises a near-infrared wavelength between approximately 700 nm and approximately 2500 nm, and wherein at least a portion of the one or more fibers is a fused silica fiber with a core diameter less than approximately 400 microns;<br><br>a measurement apparatus configured to receive a received portion of the output optical beam and to deliver to a sample an analysis output beam, which is a delivered portion of the | 1. A measurement system comprising:<br><br>a light source comprising a plurality of semiconductor sources that are configured to generate an output optical beam with one or more optical wavelengths, the light source configured to increase signal-to-noise ratio by increasing a light intensity relative to an initial light intensity from at least one of the plurality of semiconductor sources;<br><br>a measurement device configured to: receive a portion of the output optical beam, and deliver an analysis output beam to a sample;<br><br>a receiver configured to:<br><br>receive and process at least a portion of the analysis output beam reflected or transmitted from the sample,<br><br>generate an output signal representing at least in part a non-invasive measurement on blood contained within the sample,<br><br>synchronize to the light source,<br><br>capture light while the semiconductor sources are off and convert the captured light into a first signal,<br><br>capture light while at least one of the semiconductor sources is on and convert the captured light into a second signal, the captured light including at least a part of the at least a portion of the analysis output beam reflected or transmitted from the sample, and<br><br>the measurement system further configured to improve the signal-to-noise ratio by differencing the first signal and the second signal; |

[redacted]

| | |
|---|---|
| output optical beam and wherein the delivered portion of the output optical beam is a spatially coherent beam;<br><br>a receiver configured to receive and process at least a portion of the analysis output beam reflected or transmitted from the sample having a bandwidth of at least 10 nanometers and to generate an output signal; and<br><br>a personal device comprising a wireless receiver, a wireless transmitter, a display, a microphone, a speaker, one or more buttons or knobs, a microprocessor and a touch screen, the personal device configured to receive and process at least a portion of the output signal, wherein the personal device is configured to store and display the processed output signal, and wherein at least a portion of the processed output signal is configured to be transmitted over a wireless transmission link. | a smart phone or tablet comprising a wireless receiver, a wireless transmitter, a display, a microphone, a speaker, one or more buttons or knobs, a microprocessor and a touch screen, the smart phone or tablet configured to: receive and process at least a portion of the output signal, store and display the processed output signal, and transmit at least a portion of the processed output signal over a wireless transmission link; and<br><br>a cloud configured to: receive, over the wireless transmission link, an output status comprising the at least a portion of the processed output signal, process the received output status to generate processed data, and store the processed data. |

*Compare* Ex. D ('533 Patent) *with* Ex. E ('304 Patent). Dr. Islam's testimony maps [redacted] to the light source, measurement device, and receiver elements, and he confirmed data was communicated to "a tablet" or computer that sends an output signal "configured to be transmitted over a wireless transmission link." Ex. A at 493:10-505:13. Whether the system transmitted this output signal to a cloud is a factual question Omni has not addressed. Because Omni's Motion is silent on the '304 Patent, it cannot carry its summary judgment burden as to that patent. *Arctic Cat*, 876 F.3d at 1368.

### B. At Minimum, Genuine Issues of Material Fact Preclude Summary Judgment

Even if the Court were to find Omni's evidence regarding [redacted] and the '868 Patent persuasive, the following genuine disputes of material fact remain:

1. Whether Omni Sciences made and delivered articles practicing claim 1 of the '533 Patent to [redacted], as Dr. Islam testified. Ex. A at 493:10-505:13, 506:20-21.

[redacted]

2. Whether those same [redacted] also practice at least claim 1 of the '304 Patent, given the shared specification and overlapping claim elements between the '533 and '304 Patents.

These genuine disputes are material because, if resolved in Oura's favor, they would establish that patented articles were made and sold without marking, thereby limiting Omni's recoverable damages.

## VI. CONCLUSION

For the reasons set forth above, Omni has failed to demonstrate the absence of genuine issues of material fact on Oura's marking defense under 35 U.S.C. § 287. Dr. Islam's own sworn testimony—that the system [redacted] "would be covered" by claim 1 of the '533 Patent—creates a triable issue that is dispositive of this Motion. Omni's attempt to limit its analysis to a single patent and a single licensee, while ignoring the products its own affiliate [redacted], is unavailing. Oura respectfully requests that the Court deny Omni's Motion in its entirety.

Dated: May 28, 2026

Respectfully submitted,

*/s/ Jasjit S. Vidwan*
James A. Fussell, III
Jasjit S. Vidwan
Michael L. Lindinger
Tiffany A. Miller
Clark S. Bakewell
Julia Haines
Amanda E. Stephenson
Matthew Stanford
Angeline L. Premraj
Paul Choi
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006-1101
Tel: 202-263-3000
jfussell@mayerbrown.com
jvidwan@mayerbrown.com

[redacted]

mlindinger@mayerbrown.com
tmiller@mayerbrown.com
cbakewell@mayerbrown.com
jhaines@mayerbrown.com
astephenson@mayerbrown.com
mstanford@mayerbrown.com
apremraj@mayerbrown.com
pchoi@mayerbrown.com
Oura-Omni@mayerbrown.com

Robert G. Pluta
Nicholas H. Ciulla
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-701-8641
rpluta@mayerbrown.com
nciulla@mayerbrown.com
Oura-Omni@mayerbrown.com

Shaun William Hassett
SBN: 24074372
**POTTER MINTON, PC**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903-525-2272
shaunhassett@potterminton.com

*Counsel for Oura Health Oy*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of May, 2026, via electronic mail.

*/s/ Clark S. Bakewell*
Clark S. Bakewell

[redacted]

[redacted]

[redacted]
[redacted]